**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **CHRISTOPHER ADAM ERWIN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   Case No. 22-CV-3170-JWL |
| **JEFF ZMUDA,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**REPORT IN "MARTINEZ VS AARON" INVESTIGATION**
**CIVIL RIGHTS COMPLAINT**

COMES NOW, counsel undersigned for the Kansas Department of Corrections (KDOC) and in accordance with the Court's February 10, 2023 Memorandum and Order and submits the following Martinez report to assist the Court in further screening the merits of Christopher Erwin's (Erwin) claims. This report is based upon affidavit testimony and official internal facility documentation available at the time of preparation. KDOC reserved the right to seek leave to supplement this report in the unlikely event additional evidence is discovered or becomes available.

Plaintiff Erwin filed a *pro se* civil rights action pursuant to 42 U.S.C. §1983 in the United States District Court for the District of Kansas. (Doc. 1). At all relevant times, Plaintiff was a resident incarcerated in the custody of the Secretary of Corrections and was housed at the El Dorado Correctional Facility (EDCF). From February 24, 2022 until October 19, 2022, Plaintiff was housed at the Lansing Correctional Facility (LCF) in Leavenworth County, Kansas however,

none of Plaintiff's complaints occurred at LCF.  On November 10, 2022, the Court entered a Memorandum and Order to Show Cause, granting Plaintiff an opportunity to show good cause why this action should not be dismissed due to deficiencies in Plaintiff's Amended Complaint or to file a second amended complaint to cure the deficiencies. (Doc. 7) Plaintiff filed a Second Amended Complaint on December 14, 2022.  (Doc. 9)   On February 10, 2023, the Court issued an order directing the preparation of a *Martinez* report.  (Doc. 11).   The Court ordered the report focus on Plaintiff's request for injunctive relief and why such relief is either unavailable or not required by the Eight Amendment.

## **SUMMARY OF ALLEGATIONS IN PLAINTIFF'S COMPLAINT**

In his Second Amended Complaint Plaintiff alleges that he was subjected to cruel and unusual punishment related to his medical care for his Type 1 diabetes.   Plaintiff names sixteen defendants in his Second Amended Complaint and seeks the following injunctive relief: "carbohydrate info for each item on my prescribed medical diet; regular timing of meals; regular timing of insulin; shelf stable protein in my snack sack on my prescribed medical diet." (Doc.9, at 203) According to his complaint, Plaintiff is an insulin dependent Type 1 diabetic on a calorie controlled diabetic diet prescribed by Centurion medical providers. *Id.* at 15.   Plaintiff describes his blood sugar as being constantly out of control. *Id.* Plaintiff describes taking up to four insulin injections a day, testing his blood sugar up to four times a day, eating three meals and at least three snacks a day to manage his Type 1 diabetes. *Id.*    He cites hypoglycemic and hyperglycemic risks of death, coma, pain and dementia and the risks of higher HbA1c including blindness, heart attacks, strokes, and renal failure. *Id*. He believes his scrotal swelling, bleeding and cracking, which was treated by the Department via an outside provider, to have been caused by his prolonged out of control blood sugars.  *Id.* at 16

## INVESTIGATION

Plaintiff's incarceration began on November 10, 2019, at the EDCF. (Exhibit 1) On February 24, 2022, he was transferred to Lansing Correctional Facility (LCF) where he remained until October 12, 2022. He was then returned to EDCF where he continues to be housed at the time of this investigation.

### *MEDICAL CARE*

Christopher Erwin receives medical care while incarcerated at EDCF from Centurion, who is KDOC's contracted medical care provider. Erwin has Type 1 diabetes and requires insulin and glucose monitoring daily. (Affidavit of Paige Dodson, MD, ¶ 7) While at EDCF Erwin's medical needs have been thoroughly and regularly assessed. *Id.* Erwin is lucid, and able to contact medical staff, who are available at any time. *Id.* at ¶ 5. Erwin is prescribed a diabetic, carb-controlled diet deemed appropriate by the American Diabetes Association, that includes a medically prescribed snack pack used to control his blood sugar as needed between meals. *Id.* at ¶ 8. All residents prescribed this diet receive the same meal content and snacks. *Id.* Although Erwin claims it is impossible to control his diabetes without knowing the carb count of his meal tray, his opinion and belief is outdated. *Id.* at ¶ 9. However, even if Erwin wanted to count carbs, he could easily do that with the meals provided to him. *Id.* Erwin describes his blood sugar as "being constantly out of control", however, records indicate his blood sugar control has generally been near goal while incarcerated. *Id.* at ¶ 10. Only two times has his blood sugar been over 7.5, on August 9, 2022 (8.7) and November 15, 2019 (8.0). *Id.* Mr. Erwin's blood sugar levels have otherwise been under 7.5. *Id.* Appropriate care was provided to Erwin to manage his diabetes at EDCF. *Id.* at ¶ 13.

Erwin is housed in cell house B. Meal times in cell house B are scheduled, breakfast at 3:50 a.m., lunch at 10:00 a.m., and dinner at 3:30 p.m. (Buchholz Declaration, ¶ 4) If a resident requires

his blood sugar be checked or insulin administered, an EDCF officer escorts Centurion medical staff to ensure the medication cart remains out of reach of the resident and to protect medical staff. *Id.* at ¶ 5. Common practice is for medical staff to dispense insulin ten to thirty minutes prior to meal times. *Id.*

### *INTERFERENCES WITH MEDICAL TREATMENT*

At various times during his incarceration, Erwin has refused to take insulin and/or did not take it as prescribed. (Dodson Affidavit, *¶* 11) Erwin is entitled to refuse medical care, however doing so makes effective diabetic care difficult. *Id.* During the course of his diabetic medical care, medical staff would suggest modifying his insulin to prescribe a different insulin which Erwin would not agree with, as he wanted to dictate his own care which resulted in him becoming very angry. *Id.* For example, Erwin wanted to go on long-lasting insulin and was ultimately given long-lasting insulin, and then became unhappy he was on the long-lasting insulin. *Id.* at ¶ 11. Erwin has very aggressive and violent behaviors which resulted in him being placed in segregated housing. *Id.* at ¶ 7.

### *DISCIPLINARY REPORTS INVOLVING MEDICAL CARE*

On June 14, 2021, Erwin approached COI Carroll upset because insulin line had not been called over the intercom. Erwin threw a grievance form at COI Carroll, threatened to kill him, threatened to chop his head off and began swinging his fists at COI Carroll. COI Carroll issued Erwin a Disciplinary Report for Threatening and Intimidating, in violation of K.A.R. 44-12-306. (Exhibit 6)

On June 24, 2021, Erwin received two Disciplinary Report for conduct while in the insulin line. Erwin blood sugar was high, nursing staff asked if he had eaten a cookie and he responded by calling two nurses "bitch". Attempts to calm him down failed and Erwin continued his

disrespectful and combative behavior. Based upon Erwin's conduct, nursing staff secured the needles used to provide insulin due to safety concerns. Erwin was told to exit the insulin line, refused, and continued to refuse further directives, then battered Correctional Officer Hennessey. Erwin was issued a Disciplinary Report for Battery, in violation of K.A.R. 44-12-324, and Disobeying Orders, in violation of K.A.R. 44-12-304, (Exhibit 7)

During the same incident, on June 24, 2021, Officer Hennessey signaled Officer Needs Assistance in the clinic based upon Erwin's behavior. Officer Langley-Dunning responded. Attempts to deescalate Erwin failed and it became necessary to restrain him. Erwin rammed Officer Langley-Dunning in the chest with his shoulder. Erwin was issued a Disciplinary Report for Battery, in violation of K.A.R. 44-12-324. (Exhibit 8)

On November 29, 2021, Erwin inquired as to the delay of Katrina Tittsworth (Tittsworth), RN who administers insulin. He was told there was a delay due to a medical emergency. When medical staff arrived 9 minutes later, Erwin reached out the food port to grab Tittsworth, injuring her shoulder. Attempts to secure the port were made unsuccessfully by CSI Gadberry. Erwin threatened to kill CSI Gadberry and tried to grab him as well. COI Perez and COI Voegeli then attempted to secure the port and Erwin attempted to grab them through the open port. Erwin was given a Disciplinary Report for four counts of Assault, in violation of K.A.R. 44-12-323. (Exhibit 9 and Tittsworth Affidavit, ¶ 8)

On February 22, 2022, Erwin turned in a Form 9 that threatened to kill numerous staff of KDOC, Centurion and Aramark. Erwin was issued a Disciplinary Report for Threatening and Intimidating, in violation of K.A.R. 44-12-306 (Exhibit 10 and Buchholz Declaration ¶ 9)

On February 24, 2022, Erwin received insulin from medical staff. After Erwin's leg restraints were removed, he kicked Correctional Officer Perez in the lower back. Correctional

Officer Shields intervened to protect Correctional Officer Perez and Erwin kicked him in the lower abdomen.  Erwin was issued two Disciplinary Reports for Battery, in violation of K.A.R. 44-12-324 for each Shield and Perez.  (Exhibit 11 & 12)

Conviction information for the above listed Disciplinary Reports is located on Exhibit 1, KASPER report, page three.

While in restrictive housing, on February 9, 2022, Erwin's monthly administrative segregation review was conducted in compliance with IMPP 20-105A.  The recommendation of the review board was to retain Erwin's placement in administrative restrictive housing and cited violent discipline history, battery on staff, attempting to batter medical staff, possessing a homemade stabbing device and noted "Offender is argumentative, has a problem with authority.  Offender likes to challenge rules and policy's [sic]."  (Exhibit 13)

Residents in restrictive housing also have daily reports created to document their mental and physical condition, conduct, meals, and daily activities.  The daily reports are made on a report covering a week's time.  While in cellhouse B, Erwin's report covering the dates of January 1, 2023 to January 6, 2023 note "took syringe hostage" in the additional comments section.  (Exhibit 14)

## *CANTEEN PURCHASES*

During the course of his medical care, Erwin was encouraged to take his medicine daily, limit caffeine, nicotine and alcohol. (Dodson Affidavit, ¶ 12) He was encouraged to maintain a healthy diet and was provided education on the dietary limitation of sodium, fatty foods, simple carbohydrates, and refined sugar and was encouraged to eat a diet in high in fruits, vegetables, whole grains, and low-fat dairy products. *Id.*

The Kansas Department of Corrections contracts with Kansas Correctional Industries Commissary for its "canteen" services.   (Bos Declaration, ¶ 2 & 3) Menu items are marked with notations "low" or "no" to indicate menus items with no or low sugar. *Id. at* ¶ 5  Although diabetic, Erwin regularly purchased items inconsistent with his diabetic medical diet and not marked "no" or "low" in sugar content, including Lil' Dutch Maid Chocolate Crème Cookies, Lil' Dutch Maid Lemon Crème Cookies, Lil' Dutch Maid Peanut Butter Cookies, Sweet Desire Dark Chocolate Bar, Sweet Desire Milk Chocolate Bar, Sweet Desire Milk and Almond Chocolate Bar, Mrs. Freshley's Buddy Bars and Swiss Rolls, Peanut and Plain M&Ms, Skittles, Starburst, Chips Ahoy cookies, Jelly Beans, Twix candy bar, Milky Way candy bar, Reece's Pieces, Snickers candy bar, gummy bears, and holiday cookies. (Bos Declaration, Exhibit 1)

Erwin has resources available to chill food items if he so desires.   Snack pack contents are prescribed to be eaten between meals to control blood sugars and are not medically prescribed to be shelf stable, (Dodson, ¶ 8 Stevens, ¶ 6 )   Dinner in Erwin's current cell house, cell house B, is served at 3:30 p.m. and breakfast is served at 3:50 a.m. (Buchholz, ¶ 4)   A review of his Erwin's canteen purchases shows he purchased a "Coleman 6 can cooler" on March 23. 2021. (Bos ¶ 8 and Bos, Exhibit 1)   Also, if a resident does not possess a cooler, they can request a clear plastic Tupperware type container with a lid to store ice. (Buchholz Declaration, ¶ 7) "Ice pass", a process to deliver ice to residents is conducted in the morning, staff permitting. *Id.* at ¶ 6. During ice pass, an announcement is made and if a resident desires ice they turn on their light on and be present at their door. *Id.* Erwin generally does not take ice during ice pass. *Id.* at ¶ 8.

## *EXERCISE*

Erwin was encouraged to maintain a healthy weight and regularly exercise.  (Dodson, ¶ 12) Residents in restrictive housing have daily reports created to document their mental and physical

condition, conduct, meals, and daily activities (including showering, exercise and clothing change). (Moore Declaration, ¶ 4) Restrictive Housing residents are offered an hour of exercise time each day. *Id.* Whether the resident took advantage of the exercise time offered is documented on the daily report. *Id.* The daily reports are made on a report covering a week's time.   During February 3, 2020, until May 6, 2023, while in restrictive housing, it appears Erwin only took advantage of exercise eleven times. *Id.*

### *CARBOHYDRATE INFORMATION*

Kansas Department of Corrections contracts with Aramark Correctional Services (Aramark) to exclusively provide food services to in all KDOC facilities.  (Sicard Declaration, ¶ 4) Aramark provided food service for specialized religious and medical diets in accordance with its Kansas DOC Medical Nutrition Therapy & Religious Meals Manual (Manual), Revised 10/2019.  *Id.*  Carbohydrate information for meals and evening/PM snack are contained on pages 26, 27 and 28.  *Id.* at ¶ 6, 7 & 8.  Aramark is also  required to comply with KDOC's Internal Management Policy and Procedures. (Bos, ¶ 14, Sicard , ¶ 8 )

### *GRIEVANCES*

The process for reviewing resident grievances is contained in several Kansas administrative regulations including K.A.R. 44-15-101 (Exhibit 20), Inmate or parolee grievance procedure; informal resolution; formal levels describes the several levels of problem solving, K.A.R. 44-15-101a (Exhibit 21), Grievance procedure distribution, orientation; applicability; remedies; advisory committee; investigation requires grievance procedure regulations be distributed or made readily available to all inmates and K.A.R. 44-15-102 (Exhibit 22), Procedure, outlines the grievance procedure an inmate must use.

The Secretary's Designee and Interstate Compact Administrator Darcie Holthaus identified four relevant letters Erwin sent to the Secretary of Corrections regarding food service. (Holthaus Declaration, ¶ 3) All four fail to follow the grievance procedure and/or fail to exhaust administrative remedies. *Id.* at ¶ 4, 5, 6 and 7. On October 27, 2020, Houthaus' predecessor Douglas Burris (Burris) wrote Erwin, acknowledging he received Erwin's correspondence, Form 9s and a letter requesting a copy of the 2800 calorie menu, nutritional information of the 2800 calorie menu and a change in the contents of his snack pack. *Id.* at ¶ 4. Burris noted Erwin had failed to exhaust the grievance procedure before contacting the Secretary of Corrections and returned his material so that he could properly do so. *Id.* On February 20, 2020, Burris again wrote to Erwin regarding a food service grievance. *Id.* at ¶ 5. Burris indicated although records showed Erwin filed a food service grievance with Aramark, which was answered, he had not filed an appeal to the Secretary. *Id.* On August 10, 2021, Holthaus responded to Erwin after he send a letter to the Secretary regarding medical staff and receiving insulin. Holthaus pointed out that his grievance was still awaiting a response from the Warden and contacting the Secretary was premature. *Id.* at ¶ 6. On May 27, 2021, Holthaus again responded to Erwin regarding a letter of complaint he'd sent regarding his insulin, blood sugar, staffing, and the content of his meals. *Id.* at ¶ 7. She returned his letter to him without a response due to it not following the regulatory grievance process. *Id.*

## **CONCLUSION**

Plaintiff alleges that, while housed at the EDCF, he has suffered cruel and unusual punishment related to his Type 1 diabetes care administered by Centurion, KDOC's contracted medical provider. Contrary to Plaintiff's assertions, Erwin's medical needs, diabetic or otherwise, have been thoroughly and regularly assessed. Erwin is provided insulin and glucose monitoring numerous times a day, a prescribed diabetic diet with a snack pack to control blood

sugar during meals, offered counseling on engaging in a healthful diabetic lifestyle including exercise and smart canteen food choices.  Contrary to Plaintiff's claims his blood sugar is "constantly out of control", medical records show his blood sugars have generally been near goal, with only two exceptions.   Mealtimes and insulin times are scheduled according to cell house, although a facility emergency may cause a slight delay occasionally.  Although Erwin might prefer a shelf stable protein such as peanut butter, the prescribed medical purpose of the snack pack is to be consumed between meals to regulate blood sugar levels, not requiring the protein to be shelf stable.  Even so, Erwin has a cooler, purchased on March 23, 2021, if his desire was to refrigerate leftover snack pack items.  Ice is provided to residents during an ice pass, which Erwin generally does not take advantage of.

Erwin frequently and consistently acts in a manner to circumvent, disrupt, or interfere with his diabetic care provided by Centurion.  He is difficult and combative with medical recommendations, wanting to dictate his medical care.  He has initiated numerous physical altercations with medical staff as they attempt to provide him medical care, resulting in a disruption of care.  He does not follow advised food choices when selecting canteen items and very rarely leaves his cell for daily cell exercise time.   Plaintiff's medical records do not support his claims of constitutional violations related to his diabetic care while at EDCF.

Respectfully submitted,

*/s/ Laine C. Barnard*
Laine C, Barnard, KS No. 19467
Legal Counsel
Kansas Department of Corrections
714 SW Jackson St, Suite 300
Topeka, KS 66603
Tel: (785) 506-7615
Email: Laine.Barnard@ks.gov

**EXHIBIT LIST**

1. KASPER Profile for Christopher Erwin

2. Affidavit of Sarah Madgwick

3. Medical Records of Christopher Erwin (filed conventionally and under seal)

4. Affidavit of Paige Dodson, M.D.

5. Affidavit of Katrina Tittsworth, LPN

6. June 14, 2021 Disciplinary Report

7. June 24, 2021 Disciplinary Report

8. June 24, 2021 Disciplinary Report #2

9. November 29, 2021 Disciplinary Report

10. February 22, 2022 Disciplinary Report

11. February 24, 2022 Disciplinary Report

12. February 24, 2022 Disciplinary Report #2

13. February 9, 2022 Monthly Segregation Review

14. January 1-January 6, 2023 Daily Administrative Segregation Report

15. Declaration of Maria Bos, Deputy Warden

16. Declaration of Brian Buchholz, Unit Team Supervisor

17. Declaration of Matthew Moore, Deputy Warden

18. Declaration of Robert Stevens

19. Declaration of Shala Sicard

20. K.A.R. 44-15-101

21. K.A.R. 44-15-101a

22. K.A.R. 44-15-102

23. Declaration of Darcie Holthaus

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the above and foregoing REPORT IN "MARTINEZ VS AARON" INVESTIGATION was placed in inter-facility mail this 9th day of June 2023, to:

Christopher Erwin, #123078
El Dorado Correctional Facility
El Dorado, KS 67042
Plaintiff *pro se*

                                  */s/ Laine C. Barnard*
                                   Laine C. Barnard