IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHRISTOPHER ADAM ERWIN,

    **Plaintiff,**

    v.                                                     CASE NO. 22-3170-JWL

JEFF ZMUDA, et al.,

    **Defendants.**

## MEMORANDUM AND ORDER TO SHOW CAUSE

Plaintiff Christopher Adam Erwin is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Second Amended Complaint that are discussed herein.

**I. Nature of the Matter before the Court**

Plaintiff brings this pro se civil rights case under 42 U.S.C. § 1983. The Court granted Plaintiff leave to proceed in forma pauperis. Plaintiff is incarcerated at the El Dorado Correctional Facility in El Dorado, Kansas ("EDCF").

On November 10, 2022, the Court entered a Memorandum and Order to Show Cause (Doc. 7) ("MOSC"), granting Plaintiff an opportunity to show good cause why this action should not be dismissed due to the deficiencies in Plaintiff's Amended Complaint or to file a second amended complaint to cure the deficiencies. Plaintiff filed a Second Amended Complaint (Doc. 9). On February 10, 2023, the Court entered a Memorandum and Order (Doc. 11) ("M&O"), finding that the proper processing of Plaintiff's claims could not be achieved without additional information from appropriate officials of EDCF. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court ordered the EDCF officials to prepare and file a *Martinez* Report, stating that "[o]nce the

report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A." (Doc. 11, at 3.) The *Martinez* Report (Doc. 18) (the "Report") has now been filed. The Court's screening standards are set forth in detail in the MOSC.

Plaintiff's claims involve his medical care for his Type 1 diabetes while housed at EDCF. Plaintiff alleges Eighth Amendment violations and seeks the following injunctive relief in his Second Amended Complaint: "carbohydrate info for each item on my prescribed medical diet; regular timing of meals; regular timing of insulin; shelf stable protein in my snack sack on my prescribed medical diet." (Doc. 9, at 203.)

The Court's M&O provided that the Report should focus on Plaintiff's request for injunctive relief and why such relief is either unavailable or not required by the Eighth Amendment. For example, Plaintiff alleges that he is being provided with a snack sack to enable him to control his blood sugar levels between meals, but the protein provided is not shelf stable (like peanut butter) but rather is subject to spoilage (like meat) because Plaintiff has no means to refrigerate the sack to preserve it for later consumption. Plaintiff also seeks to have the carbohydrate information provided for items on his medical diet, and to have his meals and insulin provided at appropriate times.

## II. THE REPORT

The Report provides that Plaintiff has Type 1 diabetes and requires insulin and glucose monitoring daily, and while at EDCF his medical needs have been thoroughly and regularly assessed. (Doc. 18, at 3.) The Report provides that:

> Erwin is prescribed a diabetic, carb-controlled diet deemed appropriate by the American Diabetes Association, that includes a medically prescribed snack pack used to control his blood sugar as needed between meals. All residents prescribed this diet receive the same meal content and snacks. Although Erwin claims it is impossible to control his diabetes without knowing the carb count

> of his meal tray, his opinion and belief is outdated. However, even if Erwin wanted to count carbs, he could easily do that with the meals provided to him. Erwin describes his blood sugar as "being constantly out of control", however, records indicate his blood sugar control has generally been near goal while incarcerated. Only two times has his blood sugar been over 7.5, on August 9, 2022 (8.7) and November 15, 2019 (8.0). Mr. Erwin's blood sugar levels have otherwise been under 7.5. Appropriate care was provided to Erwin to manage his diabetes at EDCF.

*Id.* (internal citations omitted). The Report provides that carbohydrate information for meals and evening/PM snack are contained on pages 26, 27 and 28, of the Kansas DOC Medical Nutrition Therapy & Religious Meals Manual. *Id.* at 8.

The Report also provides that at various times Plaintiff refused to take his insulin and/or did not take it as prescribed. *Id.* at 4. Plaintiff also interfered with his medical treatment on multiple occasion by being threatening, violent, or aggressive, resulting in the issuance of multiple disciplinary reports and criminal charges. *See id.* at 4–6. The Report also provides that during the course of his medical care, and despite being encouraged to maintain a healthy diet, Plaintiff purchased items from the canteen that were inconsistent with his diabetic medical diet, including:

> Lil' Dutch Maid Chocolate Crème Cookies, Lil' Dutch Maid Lemon Crème Cookies, Lil' Dutch Maid Peanut Butter Cookies, Sweet Desire Dark Chocolate Bar, Sweet Desire Milk Chocolate Bar, Sweet Desire Milk and Almond Chocolate Bar, Mrs. Freshley's Buddy Bars and Swiss Rolls, Peanut and Plain M&Ms, Skittles, Starburst, Chips Ahoy cookies, Jelly Beans, Twix candy bar, Milky Way candy bar, Reece's Pieces, Snickers candy bar, gummy bears, and holiday cookies.

*Id.* at 6–7.

Plaintiff also argues that he needs "shelf stable" protein in his snack sack because he has no means to refrigerate the sack to preserve it for later consumption. The Report provides that:

3

> Erwin has resources available to chill food items if he so desires. Snack pack contents are prescribed to be eaten between meals to control blood sugars and are not medically prescribed to be shelf stable[.] Dinner in Erwin's current cell house, cell house B, is served at 3:30 p.m. and breakfast is served at 3:50 a.m. A review of his [sic] Erwin's canteen purchases shows he purchased a "Coleman 6 can cooler" on March 23. 2021. Also, if a resident does not possess a cooler, they can request a clear plastic Tupperware type container with a lid to store ice. "Ice pass", a process to deliver ice to residents is conducted in the morning, staff permitting. During ice pass, an announcement is made and if a resident desires ice they turn on their light on [sic] and be present at their door. Erwin generally does not take ice during ice pass.

*Id*. at 7 (internal citations omitted). The Report also provides that, despite being encouraged to maintain a healthy weight and to exercise regularly, Plaintiff only took advantage of exercise time eleven times between February 3, 2020 and May 6, 2023. *Id*. at 7–8.

The Report also alleges that Plaintiff failed to properly exhaust his administrative remedies, as follows:

> The Secretary's Designee and Interstate Compact Administrator Darcie Holthaus identified four relevant letters Erwin sent to the Secretary of Corrections regarding food service. All four fail to follow the grievance procedure and/or fail to exhaust administrative remedies. On October 27, 2020, Houthaus' predecessor Douglas Burris (Burris) wrote Erwin, acknowledging he received Erwin's correspondence, Form 9s and a letter requesting a copy of the 2800 calorie menu, nutritional information of the 2800 calorie menu and a change in the contents of his snack pack. Burris noted Erwin had failed to exhaust the grievance procedure before contacting the Secretary of Corrections and returned his material so that he could properly do so. On February 20, 2020, Burris again wrote to Erwin regarding a food service grievance. Burris indicated although records showed Erwin filed a food service grievance with Aramark, which was answered, he had not filed an appeal to the Secretary. On August 10, 2021, Holthaus responded to Erwin after he send [sic] a letter to the Secretary regarding medical staff and receiving insulin. Holthaus pointed out that his grievance was still awaiting a response from the Warden and contacting the Secretary was premature. On May 27, 2021, Holthaus again responded to Erwin regarding a letter of complaint he'd sent regarding his insulin, blood sugar,

> staffing, and the content of his meals. She returned his letter to him without a response due to it not following the regulatory grievance process.

*Id*. at 9 (internal citations omitted).

### III. DISCUSSION

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

The "deliberate indifference" standard includes both an objective and a subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted). In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *Martinez*, 430 F.3d at 1304 (citation omitted). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)). Plaintiff's Type 1 diabetes is a serious medical need. *See Hammonds v. Theakston*, 833 F. App'x 295, 300 (11th Cir. 2020) (finding Type 1 diabetes is a "serious medical condition" for deliberate indifference standard); *Davis v. St. Louis Cty., Mo.*, 2015 WL 758218, at *9 (E.D. Mo. 2015) (finding Type 1 diabetes, which required an insulin pump, was sufficient to meet the objective portion of deliberate indifference); *Casares v. Linthicum*, 2019 WL 4781344, at *4 (E.D. Tex. 2019) (referring to "serious Type 1 diabetic condition" under deliberate indifference analysis); *Bolden v. FBOP*, 2016 WL 881177, at *4

(S.D. Ind. 2016) (noting that defendants concede that plaintiff's type 1 diabetes is a "serious medical need").

The deliberate indifference standard also has a subjective component. "The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id*. (quoting *Sealock*, 218 F.3d at 1209). In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).

A mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment. *See Estelle*, 429 U.S. at 106–07; *see also Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) (prisoner's right is to medical care—not to type or scope of medical care he desires and difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983).

The Report shows that Plaintiff has been provided with adequate medical care and Plaintiff's own conduct has interfered with his treatment. Plaintiff has not shown that a prison official both knew of and disregarded an excessive risk to Plaintiff's health or safety.

The *Martinez* report developed as a means "to ascertain whether there is a factual as well as a legal basis for [a] prisoner's claims." *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987). The report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citing *Sampley v. Ruettgers*, 704 F.2d 491, 493 n. 3 (10th Cir. 1983)). Thus, at this point in the proceedings the Court does

not use the Report to resolve conflicts of fact.  *See Swoboda v. Duback*, 992 F.2d 286, 290 (10th Cir. 1993) ("In determining whether a plaintiff has stated a claim, the district court may not look to the Martinez report, or any other pleading outside the complaint itself, to refute facts specifically pled by a plaintiff, or to resolve factual disputes.").

In light of the Report, the Court is considering dismissal of this matter for failure to state a claim. Plaintiff will be given an opportunity to respond to the Report and to show good cause why dismissal should not be entered. Plaintiff is also given the opportunity to address the claim that he has failed to exhaust his administrative remedies.  The Interested Party shall provide Plaintiff with reasonable access to review his medical records contained in Exhibit 3 to the Report.[1]

**IV. Response Required**

Plaintiff is required to show good cause why his Second Amended Complaint should not be dismissed for the reasons stated herein.  Failure to respond by the deadline may result in dismissal of this case without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **July 17, 2023,** in which to show good cause, in writing to the undersigned, why Plaintiff's Second Amended Complaint should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED.**

Dated June 15, 2023, in Kansas City, Kansas.

S/ John W. Lungstrum
JOHN W. LUNGSTRUM
UNITED STATES DISTRICT JUDGE

---

[1] The Court is aware of Plaintiff's objection at Doc. 17, where he alleges that he has been denied reasonable access to his medical records. Plaintiff also expresses concerns about the delay in having his records sent to his outside doctor, but notes that they were finally sent to his doctor.  Plaintiff should file a motion for an extension of time if he determines that he has had insufficient time to review his records prior to filing a response.